**NOT FOR PUBLICATION**                                                           **CLOSED**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WILFREDO TERON, | : |
|         Plaintiff, | : |
| v. | :   CIVIL ACTION NO. 06-0239 (JAP) |
| COMMISSIONER OF SOCIAL SECURITY, | :   **OPINION** |
|         Defendant. | : |

APPEARANCES:

ABRAHAM S. ALTER, Esq.
Langton & Alter
P.O. Box 1798
Rahway, NJ 07065
    Attorney for Plaintiff


Christopher J. Christie, Esq.
United States Attorney
Maria Fragassi Santangelo, Esq.
Special Assistant United States Attorney
Office of the United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Attorneys for Defendant

PISANO, District Judge:

Before the Court is Wilfredo Teron's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument, *see* Fed R. Civ. P. 78.

Plaintiff's appeal rests on his assertion that he "did not receive a full and fair hearing because the ALJ's [Administrative Law Judge's] conduct betrayed the appearance of bias." Pl. Brf. at 13. Specifically, Plaintiff asserts that the ALJ, at a supplemental hearing, recalled a medical expert to testify and "recant" earlier testimony that Plaintiff alleges would have mandated a finding that Plaintiff was disabled. The Court, however, finds that the record shows that Plaintiff received a full and fair hearing and, accordingly, affirms the Commissioner's decision.

I.      **Facutal and Procedural Background**

Plaintiff was born on January 31, 1966. He has a 10th grade education and an unskilled work background. His past relevant work history includes work as a warehouse worker and machine operator. Plaintiff asserts that he was disabled between December 31, 1995 and November, 2000 due to severe asthma.

Plaintiff filed an application for benefits on March 5, 1996, alleging an inability to work since December 31, 1995 due to severe asthma. The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon reconsideration. On May 18, 1998, a hearing was held before Administrative Law Judge Linda A. Stagno ("ALJ Stagno"). On November 12, 1998,

ALJ Stagno issued a written decision denying Plaintiff's claim.  Plaintiff then filed an appeal of ALJ Stagno's decision with the Social Security Appeals Council ("Appeals Council") on January 12, 1999.  The Appeals Council denied this request on January 23, 2002.

Plaintiff then appealed to the United States District Court for the District of New Jersey.  On January 10, 2003, a consent order was entered remanding the case to the Commissioner for further administrative action.  In an order issued on February 25, 2003, the Appeals Council found several errors in ALJ Stagno's decision and remanded the case for further proceedings.

### 1. The February 17, 2004 Administrative hearing

On February 17, 2004, a hearing was held before Administrative Law Judge Michal L. Lissek.[1]  At this hearing, Plaintiff amended his complaint stating that his date of disability was confined to the period from December 31, 1995 through November 2000, as Plaintiff had returned to work in November 2000.  At this hearing, Dr. Martin A. Fechner testified as a medical expert, in addition to vocational expert Melissa Fass-Carlin.

Dr. Fechner testified that Plaintiff's asthma did not meet or equal a listed impairment, based on the evidence available at the time.  (R. 252).  Dr. Fechner was then asked about Plaintiff's residual functional capacity ("RFC"), resulting in the following testimony:

> **ALJ**: Are there any -- during that timeframe do his impairments impose any functional limitations or restrictions on his ability to function in a work setting based on the records that you said are in the file and based on the testimony that you've hear today?
>
> **Dr. Fechner**: I think he probably be in a sedentary and the usual pulmonary –
>
> **ALJ**: Okay.  So what would be the other restrictions?  The other limitations?

---

[1]According to Plaintiff, ALJ Stagno had transferred to another hearing office.

>**Dr. Fechner**: <u>No known pulmonary irritants</u> and extremes of temperature. Probably the cold in particular, that would be contraindicated also.
>
>**ALJ**: So you would say that, that he would be limited to sedentary work with no contact with known pulmonary irritants and no extremes of temperature? And any other limitations?
>
>**Dr. Fechner**: That's it.

(R. 264-65) (emphasis added). At the conclusion of this testimony, Plaintiff's attorney declined to cross-examine the witness. (R. 265).

Vocational expert Ms. Fass-Carlin ("Fass-Carlin") then testified. Fass-Carlin identified three jobs that Plaintiff could perform despite not being able to come into contact with any known pulmonary irritants or extreme temperatures. These positions were identified as a charge account clerk, order clerk and surveillance system monitor. (R. 266-67). Fass-Carlin testified that all three of these positions existed in significant numbers. Before Plaintiff's counsel could cross-examine Fass-Carlin, a fire alarm went off, interrupting the proceedings for the day. (see R. 271)

On March 23, 2004, the ALJ granted Plaintiff an extension to file a post brief hearing. He also extended the time for Plaintiff to submit new evidence until April 16, 2004. (R. 369). On April 19, 2004, Plaintiff submitted a letter brief to the ALJ asking for a supplemental hearing to the one that was interrupted by the fire alarm. (R. 370).

Also in this letter, Plaintiff characterized Dr. Fechner's testimony that as stating that Plaintiff could tolerate "no extremes of temperature and <u>no pulmonary irritants</u>." (R. 370) (emphasis added). Plaintiff also directed the ALJ's attention toward Social Security Ruling ("SSR") 85-15. (R. 370). This ruling clarifies how the regulations and the exertionally based

4

numbered decisional rules in Appendix 2, Subpart P, Regulations No. 4, provide a framework for decisions concerning persons who have only a nonexertional limitation(s) of function or an environmental restriction(s). SSR 85-15.  The applicable part of this ruling with respect to respiratory conditions reads:

> Where a person had a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc.
>
> Where an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerate because very few jobs environments are entirely free of irritants, pollutants and other potentially damaging conditions.
>
> Where the environment restrictions falls between very little and excessive, resolution of the issue will generally require consultation of occupation reference materials or the services of a [vocational expert].

SSR 85-15.  Plaintiff contended that in accordance with SSR 85-15, a vocational experts testimony is only needed when a person must avoid somewhere between very little and excessive amounts of pulmonary irritants.  (R. 371).  Plaintiff's counsel asserted that Dr. Fechner's testimony with respect to "no known pulmonary irritants" meant that Plaintiff could tolerate very little pulmonary irritants.  As a result, Plaintiff argued that testimony from a vocational expert should not have been necessary and Plaintiff should have been found disabled based solely Dr. Fechners testimony.  (R. 371).  The ALJ nevertheless ordered a supplemental hearing to take place on October 28, 2004.  (R. 372).

    2.       **The October 28, 2004 hearing**

At the supplemental hearing on October 28, 2004, Dr. Fechner testified again, along with a different vocational expert, Mr. Rocco Meola. ("Meola")  (R. 270).  The ALJ had called back Dr. Fechner in order to clarify his testimony regarding Plaintiff's exposure to pulmonary

5

irritants. (R. 274-75). While it was clear from Plaintiff's letter to the ALJ that Plaintiff construed Dr. Fechner's earlier testimony to mean that Plaintiff could not have exposure to any pulmonary irritants, the ALJ had a different understanding of the testimony. (R. 274-75) ("We want to find out what he meant by that. . . that wasn't my understanding."). Therefore, the ALJ thought a clarification was necessary. (R. 275).

Plaintiff's counsel objected to Dr. Fechner testifying again as he believed that the ALJ was "done with Dr. Fechner." (R. 275) The ALJ stated that Dr. Fechner was never excused and that he would have likely been recalled to testify following the vocational expert's testimony. (R. 275). However, the first hearing was interrupted by the fire alarm. (R. 271).

At the supplemental hearing, Dr. Fechner testified that he had an opportunity to review the record of the case and that he had not discussed the merits of the case with the ALJ or anyone from the Office of Hearings and Appeals since the previous hearing. (R. 275). Dr. Fechner further testified:

> **ALJ**: ... Now at the last hearing as we mentioned you testified that you felt the claimant could do sedentary work with no exposure to known pulmonary irritants or extremes in temperature. The clarification that I wanted, when you said with no exposure to known pulmonary irritations, was it your opinion that the claimant would have to be in a pristine environment or would a normal office environment - - is what you had in mind?
>
> **Dr. Fechner**: I did no[sic] have in mind a pristine environment first of all. There are pulmonary irritants, chemicals, any of those things that are know[sic] known to irritate the lungs that the claimant should not, not be around.
>
> **ALJ**: Okay. Can you give me some examples of those?
>
> **Dr. Fechner**: Aromatic chemicals, for instance.

| | |
|---|---|
| **ALJ**: | Like what? |
| **Dr. Fechner**: | I wouldn't, I wouldn't know the names of that.  Probably the - - |
| **ALJ**: | Are you talking about like cleaning solutions? |
| **Dr. Fechner**: | Yeah.  Things like that. |
| **ALJ**: | Or like paint? |
| **Dr. Fechner**: | Yeah. |
| **ALJ**: | If it's something freshly painted? |
| **Dr. Fechner**: | Yeah.  That's like - - my feeling was, for instance, that dust is a good example.  If you're in an environment with an undue amount of dust that that would be an irritant.  However, in, in the general environment that, that we're in there's not an undue amount of dust.  And, therefore, that should be a problem, but - - |
| **ALJ**: | So you're saying - - |
| **Dr. Fechner**: | - - does not have to be pristine and like that |
| **ALJ**: | So you're saying generally that a normal office environment would be, would be okay for the claimant? |
| **Dr. Fechner**: | That's correct. |

(R. 276-77).  Additionally, when asked by Plaintiff's counsel about his previous testimony regarding exposure to pulmonary irritants, Dr. Fechner clarified that his testimony was not "no pulmonary irritants", "little pulmonary irritants," or "very little pulmonary irritants," but "no <u>known</u> pulmonary irritants."  (R. 278) (emphasis added).

In summation, Dr. Fechner testified that Plaintiff could work anywhere as long as the work "was not involved with known pulmonary irritants," for example, as a painter or in a chemical factory.  (R. 280-81).  Additionally, Plaintiff could not work anywhere with an undue accumulation of dust.  (R. 281).  Dr. Fechner also noted that he was aware of "people with

7

asthma [who] work all the time...") (R. 281). Dr. Fechner clarified that Plaintiff could have "no exposure to excessive amounts of pulmonary irritants or extremes in temperature." (R. 281-82).

Plaintiff's counsel took exception to Dr. Fechner's testimony, alleging that Dr. Fechner's testimony had "changed" since the first hearing and upon cross-examination, and questioned this change:

> **ATY**: Doctor if I understand you correctly we've gone from none, you were going to add limited and then we went from none to limited to not excessive. Not excessive, I assume in the common sense definition is on one end of the scale and none is on the other. No or none is on one end, not excessive would be all the way down next to excessive I guess. Right on the other end of the scales. So you've completely recanted your prior testimony and you've change in now . . .
>
> **ALJ**: Okay. I'm not going to allow this counsel. I think that the doctor's testimony to me it's very clear. And I think you're quibbling about things
>
> **ATY**: Please, Judge with all due respect, Judge. You've sat here and you've lead this witness which is certainly your prerogative as the Judge to ask questions for all sides, the Administration and the claimant and to try to get a clear understanding of what's going on. But let's be clear about what just happened here - - From what I understand, and we can play the tape back, the doctor testified last time no pulmonary irritants, that's on one end of the scale. We don't want any pulmonary, it's not like, well, in this room is a painter and painters provide excessive, turpentine, that's excessive pulmonary irritants. But that's not what he said the last time . . . But to come back and not let me ask him a question unequivocally he changes his testimony. He went from I saw him to I didn't see him and I can't ask him a question why he changed it, was it because of the types of questions he was asked? I mean I don't understand how you can go from A to B. I think we have a right to ask him why he changed his testimony.
>
> **ALJ**: Alright. Why did you change your testimony?

**Dr. Fechner**: Because of the intent of what I meant was, was twisted around by saying no, no exposure to no pulmonary irritants.

**ALJ**: He just said that if that were true that it would mean that no person with asthma could eve[sic] work in an office.

**ATY**: That's right.

**ALJ**: And that's not, was not his opinion.

**ATY**: First of all, the doctor, I mean when did the doctor become doctor, vocational expert and Judge here.

**ALJ**: Okay.  You know what, counsel, we're going to stop with this right now.

**ATY**: You're not letting me - -

**ALJ**: Were going to let Mr. Mueller (Phonetic) testify.

**ATY**: That's his opinion, that his non-expert opinion by the way of who can get disability.

**ALJ**: No, this is based on his practical experience as a doctor who treats people who have asthma and who he knows what their working conditions are and what problems are, that's what it is.

**ATY**: Judge - -

**ALJ**: And I'm not going to continue this line.

**ATY**: I didn't, I didn't - -

**ALJ**: I'm not continuing this line now.

**ATY**: I object that we're not able to ask the doctor why - -

**ALJ**: Okay.  You're - -

**ATY**: - - he changed his testimony.

**ALJ**: You asked him and he just, he's just said why.  That the previous - -

|   |   |
|---|---|
| **ATY**: | Because no one would get disability if they ahd asthma then, is that the reason that he changes his testimony? Because no one could[sic] disability if they had asthma, that's the understanding I have, that's an answer. |
| **ALJ**: | If you don't remember what I said, Mr. Lankin (Phonetic), you can check the tape - - |
| **ATY**: | Yeah, I wish we would.  That would be very instructive as to that. But if that's his answer that's fine, Judge.  That's fine. |
| **ALJ**: | What he said was that the testimony of - - that no, meaning not any, any even slightest amount of pulmonary irritants was not his intent.  And to explain the basis of change it was that[sic] that type of an interpretation of his testimony[sic] does not comport with his experience as a doctor treating asthmatic patients who do not need to work in a pristine environment and who can work in a normal office environment.  That's in his experience.  That's medical testimony based on his practical knowledge as a doctor and not vocational.  But I'm not proceeding with this any further. |

(R. 282-85).

At the conclusion of Dr. Fechner's testimony, vocational expert Meola testified.  (R. 286).  Meola agreed with the testimony of the previous vocational expert in that the jobs of charge account clerk, order clerk and surveillance system monitor were jobs that Plaintiff could perform if Plaintiff could have no exposure to known pulmonary irritants or extremes in temperature.  (R. 287).  Meola also added that other, similar jobs existed, such as check writer and addresser.  (R. 288).  Meola further testified that if Plaintiff could perform sedentary work with no exposure to excessive amounts of pulmonary irritants, he would still be capable of performing the jobs previously listed, as an office is generally considered a clean environment.  (R. 288).

In Plaintiff's cross-examination, counsel asked Mr. Meola about Plaintiff's ability to work in an environment with "no exposure to pulmonary irritants." Meola corrected Plaintiff's

counsel by pointing out that he ALJ's hypothetical was "no *known* pulmonary irritants." (R. 290). Meola stated that the jobs identified are not performed in environments in which known pulmonary irritants exist.[2]

On November 23, 2004, the ALJ denied Plaintiff's claims for DIB and SSI, finding that Plaintiff was not disabled during the period in question. The Appeals Council declined to hear Plaintiff's case, making the ALJ's decision the final determination of the Commissioner.

**B.**     **The ALJ's Decision**

**1.**     **The Five-Step Analysis for Determining Disability**

Social Security Regulations provide a five-step sequential analysis for evaluating whether a disability exists. *See* 20 C.F.R. § 20 C.F.R. §§ 404.1520, 416.920.[3] For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)-(c), 416.920(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

---

[2] Meola stated that if the hypothetical had been "no pulmonary irritants," someone with that limitation would have to work in a pristine environment where no pulmonary irritants would exist. (R. 290-91).

[3] The regulations implementing the standard for obtaining disability insurance benefits, 42 U.S.C. § 401 *et seq.*, and those implementing the standard for supplemental security income, 42 U.S.C. § 1381 *et seq.* are the same in all relevant respects. *See Sullivan v. Zebley*, 493 U.S. 521, 526 n.3 (1990).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the Code of Federal Regulations ("Listing of Impairments"). *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. §§ 404.1520(e), 416.920(e). Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work in the national economy, considering his residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The Dictionary of Occupational Titles classifies the different levels of physical exertion, namely, sedentary, light, medium, heavy, and very heavy, that could be associated with a job. *See* 20 C.F.R. §§ 404.1567, 416.967. If the Commissioner cannot satisfy the burden, the claimant shall receive social security benefits. *Yuckert,* 482 U.S. at 146-47 n.5.

After reviewing the available evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled. The ALJ made findings as set forth below.

2.      **The ALJ's Determination At Steps One Through Three**

The ALJ first determined that the Plaintiff had not engaged in any substantial gainful activity from December 31, 1995 until November 2000. Next, the ALJ had to determine whether any of Plaintiff's ailments were "severe." The ALJ found that Plaintiff's asthma and COPD were severe impairments within the meaning of the regulations. However, after examining the medical record, the ALJ held that Plaintiff's impairments were not "severe" enough to meet or medically equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

3.      **The ALJ's Determination At Step Four**

The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits him to resume his previous employment. As indicated above, if the claimant is found to be capable of returning to his previous type of work, then he is not "disabled" and therefore not entitled to disability benefits. A comparison between the claimant's residual functional capacity and the requirements of his past relevant work is necessary to satisfy step four. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Burnett v. Comm'r of Social Security Administration*, 220 F.3d 112, 120 (3d Cir. 2000).

The ALJ determined that based on the evidence contained in the record, Plaintiff retained the residual functional capacity to perform work at the sedentary level with the limitation that he be exposed to no known pulmonary irritants and no extremes of temperature. In making this

determination, the ALJ noted that Plaintiff's allegations of disability were not supported by the objective evidence in the record.

**4.      The ALJ's Determination At Step Five**

After taking into consideration Plaintiff's medically determinable impairments, age, education, past work and functional restrictions, the ALJ determined that Plaintiff could perform other occupations in the national economy and thus, was not disabled. The ALJ applied Medical-Vocational Rule 201.14 in making this determination.

**II      Legal Discussion**

Principles of due process require that administrative hearings be full and fair, and judicial interpretation of administrative regulations provide for judicial review of a claim of bias in an administrative proceeding. *See Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cr. 1984) (finding that 20 C.F.R. §§ 404.940, 416.1440 permit judicial review of bias claims in a proceeding under § 405(g)); *Ventura v. Shalala,* 55 F.3d 900, 902 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971) (stating that while a social security "hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair"). In order to receive a fair hearing, it is essential that the judge be unbiased. *Id.* (citing *Hummel*, 736 F.2d at 93)(finding that it is essential to due process to have a trial before an unbiased judge in both judicial and administrative adjudications).

"The due process requirement of an impartial decisionmaker is applied more strictly in administrative proceedings than in court proceedings because of the absence of procedural safeguards normally available in judicial proceedings." *Id.* (citing *Hummel*, 736 F.2d at 93). The absence of bias in an ALJ is particularly important because unlike judges in, for example,

district court, ALJ's play an active role in social security cases. *Id*. An ALJ has a duty to fully develop the record, which encompasses the responsibility to elicit testimony at an administrative hearing. 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1529(a), 416.929(a). Moreover, an ALJ must gather evidence sufficient to allow him or her to evaluate the credibility of Plaintiff's subjective complaints. *See* 20 C.F.R. §§ 404.1529 and 416.929.

Plaintiff's sole argument is that he did not receive a full and fair hearing by the ALJ and, therefore, reversal is warranted. Plaintiff argues that he did not receive a full and fair hearing because (1) Dr. Fechner was improperly recalled to testify at the second hearing; and (2) the ALJ's conduct betrayed the appearance of bias. After reviewing the record, including the testimony during the two hearings, the Court concludes that Plaintiff did in fact receive a full and fair hearing for the reasons outlined below.

Plaintiff first asserts that the ALJ erred by recalling Dr. Fechner to testify during the supplemental hearing. Plaintiff claims that Dr. Fechner had completed his testimony and was dismissed as a witness by the ALJ. Plaintiff has not cited any authority prohibiting the ALJ from recalling a witness, and the Court find this argument is simply without merit.

When Dr. Fechner was called to testify in the second hearing, Plaintiff's counsel objected, saying that Dr. Fechner had completed his testimony. However, the ALJ explained that he never excused Dr. Fechner and that it was "highly likely" he would have conducted a re-examination of Dr. Fechner based on the vocational expert's testimony. (R. 275). However, the vocational experts testimony was never completed because of the fire alarm.

Next, Plaintiff contends that Dr. Fechner was recalled to provide further testimony because the ALJ was biased against either the Plaintiff himself, or asthmatics in general, and

wanted Dr. Fechner to recant his prior testimony so that Plaintiff would not be found disabled. However, absolutely nothing in the record supports the argument that there existed any bias on the part of the ALJ. The ALJ stated that it was "highly likely" he would have asked Dr. Fechner further questions after the testimony of the vocational expert. (R. 275). Moreover, the ALJ specifically stated, both at the hearing and in his opinion, that Dr. Fechner was recalled in order to testify to clarify his testimony from the first hearing. *See*, *e.g.*, R. 279 ("Based on. . . the arguments that have come up since then, I feel that I need further clarification so we got it.).

At the original hearing, the ALJ asked Dr. Fechner what restrictions or limitations would be placed on Plaintiff. Dr. Fechner answered that Plaintiff could be exposed to "no known pulmonary irritants and extremes of temperature." It appears that the ALJ, after reading Plaintiff's letter brief submitted between the hearings, realized that Dr. Fechner's testimony may have been ambiguous[4] with respect to the level of pulmonary irritants Plaintiff could be exposed to:

| | |
|---|---|
| **ALJ**: | So what I would like to do today is take some further clarification from Dr. Fechner as to exactly what his, what his testimony is, and that's why we have him here. |
| **ATY**: | I thought his testimony was taken, Judge? I mean I thought he gave his opinion. * * * No pulmonary irritants. Now if we're going to reduce, if we're looking to reduce that? |
| **ALJ**: | We want to find out what he meant by that. If he meant absolutely no – that wasn't my understanding at the last hearing. |

---

[4]The ambiguity appears to have been with respect to Dr. Fechner's reference to "no known pulmonary irritants," and whether this meant the same thing as, for example, "no pulmonary irritants" or "very little" pulmonary irritants.

Given the ALJ's duty to fully develop the record, there was nothing improper about the ALJ asking Dr. Fechner to clarify his statements.

Plaintiff also claims that evidence of the ALJ's bias is found in the ALJ's line of questioning to Dr. Fechner, which Plaintiff characterizes as "obviously leading questions [that] suggested answers to the doctor." Plaintiff argues that the ALJ gave Dr. Fechner suggested answers "which absolutely mirror and perfectly conform to the quoted portions of SSR 85-15 recited in the correspondence forwarded to the ALJ in April, 2004." According to Plaintiff, these suggested answers, along with the fact that the ALJ did not ask for a clarification at the first hearing, clearly demonstrates the ALJ's purpose was to elicit certain desired testimony from Dr. Fechner. The Court finds Plaintiff's contention is unfounded.

As noted above, Dr. Fechner was recalled to testify specifically for the purpose to clarify his prior testimony. In doing so, it was necessary for the ALJ to propose a more clear and direct line of questioning then he had in the previous hearing. Also, the fact that the ALJ used the language of SSR 85-15 only evidences that the ALJ was fulfilling his duty to fully develop the record. There is nothing in the ALJ's questioning that evinces a bias.

Indeed, the ALJ's line of questioning did not direct Dr. Fechner to any particular response, and the doctor certainly was free to testify so as to confirm Plaintiff's interpretation of the original testimony. However, contrary to Plaintiff's interpretation of the doctor's original testimony, Dr. Fechner clarified that, in his opinion, Plaintiff's work environment did not have to be completely irritant free. Plaintiff, being unhappy with this testimony, accuses not only the ALJ with bias, but the doctor as well. <u>See</u> Pl. Brf. at 24 ("Once the doctor learned that Social Security's Rulling translated his original testimony into a finding of disability, he objected to

such an outcome and changed his testimony accordingly."). This bald and unsupported allegation is utterly without merit.

Last, Plaintiff also complains that the ALJ did not allow Plaintiff's counsel to cross-examine Dr. Fechner during the supplemental hearing. This is simply untrue. Plaintiff's counsel was permitted to cross-examine the doctor, and the ALJ only interrupted the cross examination when it became argumentative. This was clearly within his discretion. *Richardson v. Perales*, 402 U.S. 389, 400 (U.S. 1971) ("[T]he conduct of the hearing rests generally in the examiner's discretion.").

## V.     Conclusion

For the foregoing reasons, the Court finds that the record in this case shows that the ALJ, in accordance with his duty, developed the record fully and fairly, and acted as an impartial decision-maker without prejudice or bias towards plaintiff. Accordingly, the decision of the Commissioner is affirmed. An appropriate order accompanies this opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: August 28, 2007